# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TALLIE A. ROLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1567 |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

### I. **MEMORANDUM**

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 7) will be granted, and Defendant's Motion for Summary Judgment (Doc. 10) will be denied.

Plaintiff Tallie A. Roll ("Roll") protectively applied for supplemental security income ("SSI") benefits on August 1, 2009, alleging that she had become "disabled" on September 1, 2006. (R. at 138, 152). Pennsylvania's Bureau of Disability Determination denied the application on December 8, 2009. (R. at 91, 97). Roll responded on January 11, 2010, by filing a request for an administrative hearing. (R. at 103-105). On March 22, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Alma S. de Leon. (R. at 55). Roll, who was represented by counsel, appeared and testified at the hearing. (R. at 57-83). Charles M. Cohen ("Cohen"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 83-85). In a decision dated April 14, 2011, the ALJ determined that Roll was not "disabled" within the meaning of the Act. (R. at 13-26).

On April 25, 2011, Roll sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 10). The Appeals Council denied the request for review on August 30, 2012, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Roll commenced this action on October 29, 2012, seeking judicial review of the Commissioner's decision. (Docs. 1 & 2). Roll and the Commissioner have filed Motions for Summary Judgment, *see* Docs. 7 & 10, which are ripe for adjudication.

Roll was born on January 27, 1975. (R. at 58). She obtained her General Educational Development ("GED") certification in 1995 and subsequently enrolled in college courses. (R. at 59). The courses were designed to prepare her for a career as a medical assistant. (R. at 59). Although Roll held several different jobs on a short-term basis, none of them lasted long enough to constitute "past relevant work" under the Commissioner's regulations. (R. at 84). At the time of the hearing, Roll was divorced with two children. (R. at 59). She testified that she had herniated discs in her neck and back. (R. at 61). Roll attributed her physical impairments to domestic abuse. (R. at 83).

At the second step of the sequential evaluation process, Roll was found to be suffering from "severe" back and mood disorders. (R. at 18). In accordance with 20 C.F.R. § 416.945, the ALJ assessed Roll's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the hypothetical individual[1] is limited to lift and carry no more

---

[1] The ALJ's reference to a "hypothetical individual" makes no sense in this context. When an administrative law judge elicits testimony from a vocational expert, he or she typically asks questions based on "hypothetical" residual functional capacity assessments in order to determine whether certain limitations would preclude an individual from engaging in substantial gainful activity. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). The ultimate residual

2

> than 10 pounds, to have a sit-stand option, at her discretion, and to push and pull is limited in her upper and lower extremities. Further, the hypothetical individual is limited to deal directly with the public, to have minimal interaction with peers and supervisors, to make complex decisions such as sorting work priorities, and to follow detailed instructions (no more than 3 steps).

(R. at 19). In light of this assessment, the ALJ concluded that Roll could work as a surveillance systems monitor, an inspector or a packer. (R. at 25). Cohen's testimony established that those jobs existed in the national economy. (R. at 85).

In support of her request for review, Roll submitted evidence to the Appeals Council that had never been presented to the ALJ. (R. at 6-9). That evidence consisted of a psychological assessment from Dr. Tod R. Marion suggesting that Roll's mental capacity was "markedly" limited in various areas, and that she would be expected to miss more than four days of work per month if she were to be employed on a full-time basis. (R. at 7-9). Dr. Marion completed the assessment on July 28, 2011, which postdated the ALJ's decision by more than three months. (R. at 9).

The Act authorizes judicial review only over a "final decision" of the Commissioner. *Califano v. Sanders*, 430 U.S. 99 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). When the Appeals Council denied Roll's request for review, the ALJ's decision became the Commissioner's "final decision" in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Only the evidence that was before the ALJ at the time of her decision can be considered for the purpose of determining whether the Commissioner's factual findings are supported by

---

functional capacity *finding*, however, pertains to the particular claimant in question rather than to a "hypothetical individual." 20 C.F.R. § 416.945.

substantial evidence. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011).

The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This provision permits a court to remand a case "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "[T]he materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination." *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). A remand under sentence six is warranted only where the claimant demonstrates that "good cause" existed for his or her failure to procure the relevant evidence at a time when it could have been considered in connection with his or her application for benefits. *Chandler*, 667 F.3d at 360. Roll does not move for a sentence-six remand. (Docs. 7, 8 & 12). It is worth noting that she failed to appear for a consultative psychological evaluation that had been scheduled to assess her potential eligibility for SSI benefits. (R. at 409-410). For these reasons, the assessment completed by Dr. Marion is not relevant to the Court's analysis in this case. *Matthews*, 239 F.3d at 593-595.

On November 10, 2009, Dr. Ryon Hurh performed a consultative physical examination of Roll in connection with her application for benefits. (R. at 401-408). After completing the examination, Dr. Hurh indicated that Roll could frequently lift or carry objects weighing up to three pounds and occasionally lift or carry objects weighing up to ten pounds. (R. at 405).

4

He reported that she could sit for up to four hours, and stand or walk for an additional four hours, during the course of an eight-hour workday. (R. at 405). Roll's pushing, pulling and reaching abilities were deemed to be limited. (R. at 405-406). Dr. Hurh asserted that Roll could engage in only occasional postural maneuvers. (R. at 406). He also stated that exposure to temperature extremes most likely would exacerbate her pain. (R. at 406).

Dr. Daniel Palmeri, a treating physician, completed a residual functional capacity questionnaire on January 3, 2011. (R. at 609-611). He reported that, over the course of a standard workday, Roll could sit for four hours and stand or walk for an additional four hours. (R. at 610). Dr. Palmeri responded in the affirmative when asked whether Roll needed a job permitting her to shift from sitting, standing and walking positions at will. (R. at 610). Although Dr. Palmeri indicated that Roll occasionally could lift or carry objects weighing up to ten pounds, he asserted that she could never lift or carry objects weighing twenty pounds or more. (R. at 611). Dr. Palmeri also posited that Roll's impairments limited the amount of time that she could engage in "repetitive reaching, handling or fingering." (R. at 611). He predicted that she would need to miss three to four days of work per month if she were to be employed on a full-time basis. (R. at 611). Dr. Palmeri stated that Roll would need to take unscheduled breaks lasting for roughly fifteen minutes every two to three hours. (R. at 610).

Although the ALJ made reference to Dr. Hurh's examination in her decision, she did not explain the weight afforded to his assessment. (R. at 21). The ALJ purported to accord "great weight" to Dr. Palmeri's assessment in limiting Roll to "the sedentary level of exertion." (R. at 24). Roll argues that the ALJ erred in failing to properly reconcile the opinions expressed by Dr. Hurh and Dr. Palmeri with her residual functional capacity assessment. (Doc. 8 at 10-13;

5

Doc. 12 at 1-3). The Commissioner contends that, at most, the ALJ's failure to address Dr. Hurh's assessment was "harmless error." (Doc. 11 at 18).

The burden of demonstrating the harmfulness of an agency's error "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). The Court is not required to remand this case to correct errors having no impact on the Commissioner's ultimate decision. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Under the present circumstances, however, the harmfulness of the ALJ's errors is apparent from the record.

While the ALJ purported to credit Dr. Palmeri's assessment, she did not fully account for the limitations described therein. (R. at 24). By affording Roll a sit/stand option, the ALJ accommodated Roll's sitting, standing and walking limitations. (R. at 19). The ALJ accounted for Roll's lifting and carrying restrictions by limiting her to "sedentary" work. (R. at 19); 20 C.F.R. § 416.967(a). In his questionnaire, however, Dr. Palmeri identified several additional restrictions that were never acknowledged by the ALJ. Dr. Palmeri opined that Roll could spend thirty percent of her workday grasping, turning or twisting objects, sixty percent of her workday engaging in fine manipulation, and twenty percent of her workday reaching with her arms. (R. at 611). He also indicated that she would need to take breaks in excess of those typically permitted by employers, and that her impairments would necessitate three to four absences per month. (R. at 610-611). The ALJ never discussed these portions of Dr. Palmeri's questionnaire.

The ALJ accounted for the exertional limitations contained in Dr. Hurh's examination report by restricting Roll to "sedentary" work with a sit/stand option. (R. at 19, 405). Nonetheless, Dr. Hurh identified additional limitations that were not reflected in the ALJ's residual functional capacity assessment. In his examination report, Dr. Hurh indicated that Roll

6

could engage in only occasional postural maneuvers, that excessive reaching would exacerbate her neck pain, and that she needed to avoid exposure to temperature extremes. (R. at 406). At the hearing, Roll testified that her pain tended to increase whenever it was overly humid or cold. (R. at 70). These nonexertional limitations were never mentioned by the ALJ.

Opinions expressed by treating and examining physicians do not necessarily bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011). Such opinions, however, can only be rejected on the basis of "contradictory medical evidence." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). An administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In this vein, the rejection of competent medical evidence must be premised on something other than an administrative law judge's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

The assessments provided by Dr. Palmeri and Dr. Hurh clearly constituted "competent medical evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1185 n.5 (3d Cir. 1992). In the absence of evidence from another physician contradicting the findings articulated by Drs. Palmeri and Hurh, the ALJ was not entitled to reject those findings on the basis of impressions gleaned from her own review of the "objective medical evidence." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Since no physician found Roll to be capable of performing the full range of work permitted under the ALJ's residual functional capacity assessment, the Commissioner's decision denying Roll's application for SSI benefits is not supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Even if the ALJ had relied upon medical assessments

to support her residual functional capacity assessment, her decision in this case would nevertheless be deficient because of her failure to explain why the additional limitations identified by Drs. Palmeri and Hurh were not credited. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).

The statutory provision authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). For the foregoing reasons, the Commissioner's decision in this case cannot be affirmed. A judicially-ordered award of benefits is warranted only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F. Supp.2d 414, 432 (W.D. Pa. 2010). The existing record does not satisfy that standard. Indeed, Roll appears to seek a remand for further proceedings rather than an immediate award of benefits. (Doc. 8 at 17; Doc. 12 at 5).

In response to questions posed by Roll's counsel, Cohen testified that no jobs existed in the national economy for an individual whose impairments would cause him or her to miss four or more days of work per month. (R. at 85). Cohen further stated that an individual who needed to be "off task" for twenty percent of a typical workday would not be able to maintain a full-time job. (R. at 85). As discussed earlier, Dr. Palmeri predicted that Roll would miss three to four days per month if she were to be employed on a full-time basis. (R. at 611). He also indicated that she would need to take unscheduled breaks lasting for fifteen minutes every two to three hours. (R. at 610). Roll's counsel did not ask whether these more narrow limitations would compromise an individual's ability to retain a "sedentary" job. (R. at 85). Cohen was never

asked whether the additional restrictions identified in Dr. Hurh's examination report would preclude an individual from working as a surveillance systems monitor, an inspector or a packer. (R. at 85). Consequently, it is not clear whether the functional limitations relied upon by Roll would have made a difference. Furthermore, the ALJ was not inevitably required to accept every limitation posited by Dr. Palmeri or Dr. Hurh. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Roll testified that she suffered from daily panic attacks. (R. at 63). Since the record contained objective evidence of impairments that could reasonably be expected to cause panic attacks, the ALJ was required to give "serious consideration" to Roll's subjective complaints. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Nevertheless, Roll failed to appear for her scheduled psychological evaluation. (R. at 409-410). Dr. Roger Glover, a non-examining psychological consultant, reported on November 30, 2009, that the record contained insufficient documentary evidence to facilitate a determination as to whether Roll's mental impairments would preclude the performance of substantial gainful activity. (R. at 411). Although the ALJ left the record open for a few weeks after the hearing to facilitate the submission of evidence relating to Roll's mental impairments, Roll did not provide the additional information. (R. at 16, 85-86). In this respect, the undeveloped state of the record is partially attributable to Roll's own neglect. *Morales*, 225 F.3d at 320. Since the record is in need of further development, the proper remedy in this case is a remand for further proceedings rather than an order directing the provision of benefits. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505-507 (3d Cir. 2009).

The Commissioner's "final decision" in this case will be vacated, and the case will be remanded for further consideration of Roll's application for SSI benefits. The Commissioner

must "reopen and fully develop the record" before reaching a determination. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). Because a remand is required for other reasons, Roll can rely on Dr. Marion's assessment to support her allegation of disability. *Reefer*, 326 F.3d at 381. If Roll fails to appear for a consultative examination scheduled to assess her entitlement to benefits, her application can be denied for that reason alone. 20 C.F.R. § 416.918(a).

Consistent with the foregoing, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 7**) is **GRANTED**, Defendant's Motion for Summary Judgment (**Doc. 10**) is **DENIED**, and this case is **REMANDED FORTHWITH** for further administrative proceedings as described herein.

IT IS SO ORDERED.


December 20, 2013                                     s/ Cathy Bissoon
                                                      Cathy Bissoon
                                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record